**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**DAVID JASON TAYLOR,**                                                          **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 4:23-CV-00085-JHM**

**BRUCE TODD,** *et al.*                                                         **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendants Henderson County, Jailer Todd, Colonel Gibson, Supervisor Rowan, and Officer Brickner. (DN 235).  Proceeding *pro se*, Plaintiff David Jason Taylor, filed a response to the motion (DN 243), and Defendants filed a reply.  (DN 244).  For the reasons that follow, the motion for summary judgment will be granted.

**I.**

Plaintiff is a post-conviction incarcerated inmate at the Henderson County Detention Center ("HCDC").[1]  Plaintiff filed a complaint and a subsequent amended complaint[2] bringing a 42 U.S.C. § 1983 action against Defendants.[3]  (DNs 1, 28).  After review of the complaint pursuant to 28 U.S.C. § 1915A, this Court determined that Plaintiff's claims for First Amendment denial of meaningful access to the courts claim could proceed generally and dismissed Plaintiff's claims

---

[1] Plaintiff was a pretrial detainee from his entry to HCDC until July 27, 2026.

[2] The amended complaint was originally filed in a separate action (4:23-CV-P129-JHM) also alleging claims for deliberate indifference to Plaintiff's serious medical needs against other healthcare providers at HCDC.  Upon review of the amended complaint, the Court determined that the actions should be consolidated with the complaint from the separate action being docketed as an amended complaint in the instant case.  (DN 27).

[3] Plaintiff's complaint and amended complaint name the following Defendants: Jailer Bruce Todd, Colonel Leslie Gibson, Felicia Rowan, Officer McElfresh, Officer Toman, Lt. Jane Knight, Officer Brickner, U.S.M.S. Greg Theil, Quality Correctional Care, Dr. Neil Troost, Nurse Practitioner Aimee Otterbein, LPN Tracy Davis, LPN Kelly Loveall, LPN Monica Chapman, RN Amanda Lamar, Nurse Whitney, Henderson County, Cody Medlock, Comprehensive Correctional Care, Dr. Wilson, Nurse Practitioner Matthew Johnston, Nurse Jonie Doe, Nurse Lindsy Doe, Nurse Kayla Doe, and Nurse Whitney Doe.  (DNs 1, 28).  Notably, a number of these Defendants were subsequently dismissed from this proceeding or Plaintiff's claim(s) against them will be adjudicated via separate memorandum opinion and order, as Defendants have filed separate motions for summary judgment.  (DNs 235, 236, 237).

under 18 U.S.C. §§ 4014, 4048, Federal Prisoner Healthcare Co-Payment Act of 2000 and claims against the United States Mashal's Service Deputy Greg Theil in his official capacity for failure to state a claim upon which relief may be granted. (DN 12). The amended complaint was similarly reviewed pursuant to 28 U.S.C. § 1915A. (DN 42). Therein, the Court determined that it would allow Plaintiff's Eighth and Fourteenth Amendment deliberate indifference to serious medical needs, First Amendment retaliation, and Plaintiff's failure to intervene/protect claim(s) to proceed against the relevant Defendants. (*Id.*, PageID #: 1030-31).

On October 29, 2025, the Court entered its *Order and Seventh Revised Scheduling Order*, therein, Plaintiff was ordered to file a pretrial memorandum setting forth the facts supporting Plaintiff's claim(s) against Defendants. (DN 218). On February 2, 2026, Plaintiff filed the pretrial memorandum setting forth specific factual allegations against Defendants. (DN 232).

## II.

### A. Factual Allegations

Plaintiff maintains that he was transferred from jail in Floyd County, Indiana to the HCDC. (DN 232, PageID #: 2822). Upon arrival at HCDC, Plaintiff claims that his legal paperwork was taken from him and placed in a hanging bag and not properly scanned into the HCDC's tablet system, effectively denying Plaintiff access to the courts. (*Id.*). Plaintiff had maintained two legal actions prior to his transfer to the HCDC: (i) a small claims lawsuit (the "Indiana Small Claims Action") in Indiana state court styled *David Jason Taylor v. Joel E. Blanchard*, 02D03-2303-SC-003029, Allen County Superior Court 3 and (ii) a § 1983 lawsuit in Indiana federal court (the "Indiana § 1983 Action") styled *David Jason Taylor v. Sheriff Frank Loop, et al*, 4:21-cv-00127-TWP-KMB, U.S. District Court, Southern District of Indiana. (*Id.*, PageID #: 2832).

2

Plaintiff maintains that "at no time was any of [his] legal materials [he] had upon arrival [to HCDC] scanned into the tablet." (*Id.*, PageID #: 2822). However, Plaintiff admits that he was "given minimal restricted, and controlled access to [his] legal materials a couple of times (less than 10) before being informed [the materials] would be destroyed if not picked up within 30 days." (*Id.*). Plaintiff maintains that this lack of access to his legal materials forced him to file an Emergency Motion for Assistance Recruiting Counsel in the Indiana § 1983 Action, which Plaintiff did not wish to do. (*Id.*, PageID #: 2823-24). Further, Plaintiff maintains that his lack of access to his legal materials harmed his Indiana Small Claims Action in which he represented himself causing the action to be dismissed. (*Id.*, PageID #: 2824).

With regard to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim(s), Plaintiff maintains that upon arrival at HCDC he explained the various medical issues to HCDC medical staff. (*Id.*, PageID #: 2825). Plaintiff maintains that he explained he was experiencing penile bleeding, arm and hand swelling, lower back pain, rectal pain, tooth pain, and lumps on Plaintiff's shoulder and back. (*Id.*). Further, Plaintiff maintains that his pacemaker was broken, and he explained his troubled heart and lung history to the HCDC medical staff. (*Id.*)

Plaintiff maintains that he was examined by Dr. Neil Troost who conducted a rectal examination when alerted of Plaintiff's rectal bleeding, which Plaintiff maintains is evidenced by blood in his boxers. (*Id.*). Plaintiff maintains that he alerted nurses of the bleeding in his boxers, but he was told to "keep [the boxers] on until the next day" when NP Aimee Otterbein could see him. (*Id.*). Plaintiff maintains that both Dr. Troost and NP Otterbein ignored the bleeding and Plaintiff's complaints about spinal pain. (*Id.* PageID #: 2825-26). Plaintiff further maintains that NP Otterbein testified that the blood in his boxers was merely brown discharge and not blood without an adequate medical basis to substantiate the claim. (*Id.*). Plaintiff also contends that he

3

was refused pain medication causing him to suffer.  (*Id.*).  Plaintiff maintains that a subsequent trip to a urologist found two ruptured blood vessels in his lower abdomen explain the bleeding and blood trapped in his arm. Plaintiff argues generally that he did not experience adequate medical care.  (*Id.*).

Plaintiff also maintains that when the West Kentucky Correctional Healthcare, LLC ("WKCH") Defendants[4] took over medical care of HCDC his claims shifted from inadequate care to lack of care.  (*Id.*, PageID #: 2828).  Plaintiff maintains that he had the same symptoms as previously described; however, Defendants maintained that X-rays came back negative.  (*Id.*). Plaintiff maintains that a CT scan should have been ordered, but it was not, that Defendants entered false information into the computer system, and that Defendants ignored his pain and refused to refer him to a qualified physician or specialist to treat it.[5]  (*Id.*).

Notably, with regard to Plaintiff's retaliation claim against Defendant Colonel Gibson, Plaintiff maintains that Colonel Gibson threatened him with isolation based on filing grievances with regard to his medical care at the hands of Dr. Troost and NP Otterbein.  (*Id.*, PageID #: 2827).

### B.  Defendants' Motion for Summary Judgment

With regard to Plaintiff's First Amendment access to courts claim, Defendants provide that upon entry to the HCDC, Defendant Brickner weighed the bag of excess of 100 pounds containing Plaintiff's legal papers and placed them in storage pursuant to the HCDC's policy.  (DN 235, PageID #: 2871).  The policy provides:

> All property belonging to inmates is stored within a hanging bag.  If property exceeds the capacity of the hanging bag then it is considered excess and may be subject to removal depending on storage capacity . . . Any inmate may have someone pick up excess property at any time; No requisition needed . . . All excess property must be mailed out within 30 days upon intake or it will be destroyed or

---

[4] The WKCH Defendants are made up of WKCH NP Matthew Johnston, LPN Jonie Smith, and LPN Lindsey Ridings.
[5] Notably, Plaintiff does not explain what false information was entered.

> donated to a local charity . . . Due to storage restraints excess legal material should be store [sic] in inmate property.

(DN 235-2).

Defendants maintain that Plaintiff was allowed to access and review his legal paperwork multiple times, which is admitted to in Plaintiff's pretrial memorandum. (DN 235, PageID #: 2872). With regard to the Indiana Small Claims Action, Defendants maintain that caselaw circumscribes a prisoner's right to access the courts to appeals, habeas corpus applications, and civil rights claims only. (*Id.*, PageID #: 2877, citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999)). Here, the Indiana Small Claims Action is not an appeal, habeas corpus application, or civil rights claim; accordingly, Defendants argue it is not a cognizable First Amendment claim. (*Id.*, PageID #: 2877-78). With regard to the Indiana § 1983 Action, Defendants maintain that Plaintiff has failed to show how Defendants' confiscation of his legal paperwork impeded, obstructed, or blocked, his ability to litigate the Indiana § 1983 Action and review of the record in that case reflects that Plaintiff's court-appointed attorney never missed a deadline and secured a settlement/sanctions against the Indiana § 1983 Action defendant. (*Id.*, PageID #: 2878-79). Accordingly, Defendants contend that there could be no prejudice suffered on behalf of Plaintiff.

With regard to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim, Defendants contend that Defendants Todd and Gibson were wholly uninvolved with Plaintiff's medical treatment and relied on the professional opinions of the relevant medical professional co-Defendants ultimately asserting that "it is not unconstitutional for Defendants Todd and Gibson to 'rely on medical judgments made by medical professionals responsible for prisoner care.'" (*Id.*, PageID #: 2880, citing *Graham ex rel. Est. of Grahm v. Cty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004)).

With regard to Plaintiff's First Amendment retaliation claim that Defendants threatened to put him in administrative segregation for filing grievances, Defendants contend that: (i) Plaintiff was never placed into administrative segregation; (ii) Plaintiff has not provided evidence of when the alleged threat occurred; and (iii) the mere threat of an adverse action does not typically constitute a retaliation of the First Amendment. (*Id.*, PageID #: 2882).

With regard to Plaintiff's contention that Defendant Todd should have moved to intervene to protect Plaintiff's healthcare needs, Defendants argue that Plaintiff broadly cannot meet the elements of the claim, but also that there was no violation of his Eighth Amendment rights. (*Id.*, PageID #: 2885). Further, Defendants maintain that Plaintiff has admitted that Defendant Todd did not do anything wrong individually, but should be liable for his subordinates; however, caselaw precludes the usage of *respondeat superior* in cases such as these. (*Id.*).

Lastly, Defendants argue that Plaintiff is not pursing a claim against Henderson County's official policy or custom as required in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978) and that Plaintiff admits in his interrogatories responses that he was not asserting a claim against Henderson County. (*Id.*, PageID #: 2876-77).

### C. Plaintiff's Response

Plaintiff reiterates throughout his response that his legal paperwork was not scanned as per policy. (DN 243). Further, Plaintiff contends that HCDC's policy of determining the "excessive-ness" of legal paperwork by the volume of a hanging bag is not an appropriate method to determine what is necessary. (*Id.*, PageID #: 3990). Plaintiff further contends that Defendants' actions left him unable to meaningfully raise issues in the Indiana § 1983 Action and that his court-appointed counsel refused to raise issues that he thought should be raised, and that his court-appointed counsel was able to collect money for his representation out of the sanctions awarded. (*Id.*, PageID

6

#: 3991). Plaintiff further alleges that the inability to access his legal paperwork prevented him from preparing for hearings, causing the court to appoint counsel, which he did not need, as he was comfortable representing himself *pro se*. (*Id*.).

Plaintiff also raises a factual dispute contending that he was placed in administrative segregation contrary to representations made in Defendants' motion for summary judgment. (*Id*., PageID #: 3994). Similarly, Plaintiff contends that Defendant Gibson agreed with medical personnel to stop treating Plaintiff's medical issues. (*Id*., PageID #: 3996).

### D. Defendants' Reply

Defendants argue that Plaintiff's response indicates that Plaintiff's First Amendment denial of access to courts claim with regard to the Indiana § 1983 action is based on Plaintiff's contentions that: (i) Plaintiff did not need court-appointed counsel; (ii) Plaintiff's court-appointed counsel refused to pursue sanctions against other parties as he wished; and (iii) after successfully securing sanctions in Plaintiff's favor, the court-appointed attorney "swoop[ed] in and collec[ted] the prize to a game [Plaintiff] had already won." (DN 244, PageID #: 4044-46). Defendants contend that Plaintiff does not explain how he would have fared better than his court-appointed attorney. (*Id*., PageID #: 4045). Defendants buttress this contention by adding that Plaintiff's court-appointed attorney successfully secured sanctions in the total amount of $22,000 payable to Plaintiff plus attorney's fees for Plaintiff's court-appointed attorney. (*Id.*). Further, Defendants argue that Plaintiff's contention that his court-appointed counsel's decision not to seek sanctions for perjury against other parties involved with the Indiana § 1983 Action is not properly before this Court, as Plaintiff's court-appointed attorney is not a party to this action. (*Id.*). In sum, Defendants contend that the undisputed facts are that Plaintiff was successfully represented in his Indiana § 1983

7

Action leading to a monetary reward; accordingly, there can be no cognizable First Amendment access to courts claim. (*Id.*, PageID #: 4046).

Defendants generally reassert and reallege their arguments with regard to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim, Plaintiff's First Amendment retaliation claim, and Plaintiff's failure to intervene/protect claims. (*Id.*, PageID #: 4046-47).

### III.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

**IV.**

*A.  Denial of Access to the Courts*

While the First Amendment provides inmates with a constitutional right of access to the Courts, the right is limited to cases which attack a prisoner's conviction, sentence, or to challenge the conditions of a prisoner's confinement. *See Thomas v. Rochell*, 47 F. App'x 315, 317 (6th Cir. 2002) (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). Further, the Sixth Circuit has held that "a prisoner's right to access courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter,* 175 F.3d 378, 391 (6th Cir. 1999). Beyond the necessity to show that the prisoner's lawsuit is one of a direct appeal, habeas corpus application, or civil rights claim, a prisoner must also establish that a defendant's conduct prejudiced the filing or prosecution of a legal matter. *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 1996).

9

Here, the Indiana Small Claims Action is based on the tort of conversion; accordingly, it is not an action which can lead to a cognizable denial of access to the courts claim.  Thus, Defendants are entitled to summary judgment with respect to Plaintiff's claims associated with the Indiana Small Claims Action.

With regard to the Indiana § 1983 Action, Plaintiff does raise a civil rights claim; however, Plaintiff has failed to show how Defendant's actions or policies have prejudiced the prosecution of the case.  Plaintiff admits to being able to review his mail multiple times and while the mail he entered HCDC with was not scanned into his tablet, all of the new mail from the lawsuit was.  Further, Plaintiff's court-appointed counsel secured a monetary award of $22,000 plus attorney's fees on behalf of Plaintiff.   Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment Claim for denial of access to the courts.

### B.  Eighth Amendment and Fourteenth Amendment  Deliberate Indifference to Serious Medical Needs

At the outset, this memorandum opinion does not contemplate any deliberate indifference regarding serious medical needs claim on behalf of any of the medical professional Defendants. Such claims will be addressed in separate memorandum opinions.

The Eighth Amendment[6] deliberate indifference standard consists of a two-part framework with both an objective component - a "sufficiently serious medical need" - and a subjective component — a "sufficiently culpable state of mind." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, (1994)).  "The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious

---

[6] Plaintiff alleges Eighth Amendment violations, but to the extent that Plaintiff alleges deliberate indifference violations prior to his conviction, the Fourteenth Amendment deliberate indifference standard applies. Notably, the objective prong of the Eighth Amendment and Fourteenth Amendment deliberate indifference to serious medical needs test is identical. *See Sutton v. Wriggelsworth*, No. 24-1483, 2025 LX 202610, at *2-3 (6th Cir. Jan. 23, 2025).

enough to violate the [Constitution]." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citing *Farmer*, 511 U.S. at 834).  A sufficiently serious medical need "is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore*, 390 F.3d at 897).

To satisfy the subjective component under the Eighth Amendment, "the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Winkler*, 893 F.3d at 891 (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)). Under this standard, "the plaintiff must show that each defendant acted with a mental state 'equivalent to criminal recklessness.'" *Rhinehart*, 894 F.3d at 738 (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)).  "This showing requires proof that each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)); *see also Richmond*, 885 F.3d at 939. With regard to the subjective component under the Fourteenth Amendment:

> The standard in this circuit to prove a deliberate-indifference claim brought under the Fourteenth Amendment by a pretrial detainee is clear. To make out such a claim, a plaintiff must demonstrate (1) an objectively serious medical need; and (2) that the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or "recklessly failed to act reasonably to mitigate the risk the serious medical need posed." *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021)[.] . . . Stated differently, a pretrial detainee must have a serious medical need, and the defendant must act, whether through intentional action or omission, recklessly in response to the need and the risk it presented to the detainee. *See Helphenstine*, 60 F.4th at 317.

*Grote v. Kenton Cty.*, 85 F.4th 397, 405 (6th Cir. 2023).

11

Here, Defendants Todd and Gibson were uninvolved with Plaintiff's medical care as the medical professional Defendants were in complete control of Plaintiff's medical care pursuant to the agreements between Quality Correctional Care and Comprehensive Correctional Care and the HCDC. (DN 235-8). It is undisputed that Defendants Todd and Gibson relied on the professional opinions of the medical professionals contracted by HCDC to provide medical care. The Sixth Circuit has held that "a non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he reasonably deferred to the medical professionals' opinions." *Green v. Crawford Cnty.*, 22 F. 4th 593, 608 (6th Cir. 2022).

Plaintiff has submitted no evidence to rebut Defendants' contentions that they reasonably deferred to the medical professional's opinions. For instance, at most Plaintiff has demonstrated that Defendants were aware of his medical needs, but that Plaintiff desired different or faster care. This assertion does not support a deliberate indifference to serious medical needs claim. *See Mitchell v. Hininger*, 553 F. App'x 602, 607-08 (6th Cir. 2014) (holding that when prison officials were aware that a prisoner wished for more treatment than the medical staff was providing, the prisoner could not successfully support a deliberate indifferent claim based on the prison officials' failure to facilitate such request). Thus, Defendants' alleged failure to act in such a situation does not amount to deliberate indifference, as the Defendants may rely on judgments of medical professionals responsible for prisoner care. Accordingly, Defendants are entitled to summary judgment on Plaintiff's Eighth/Fourteenth Amendment deliberate indifference claim(s).

### C. First Amendment Retaliation

Plaintiff's First Amendment retaliation claim is based on allegations that Defendant Gibson threatened to place Plaintiff into administrative segregation because of Plaintiff's allegedly excessive submission of grievances. In order to establish a First Amendment retaliation claim,

Plaintiff must demonstrate that: (i) he engaged in activities protected by constitution or statute; (ii) Defendants took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (iii) the adverse action was taken at least in part because of the exercise of the protected conduct. *See Thaddeus-X*, 175 F. 3d at 394. Generally, "[a]n inmate has no right to be free from verbal abuse, [] and minor threats do not rise to the level of a constitutional violation." *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002).

Here, Plaintiff has not shown any grievances or requests alleging that the alleged conduct was threatened, nor has Plaintiff provided evidence that he was placed in administrative segregation. Further, to the extent that Plaintiff was merely threatened with an adverse action, the mere threat of an adverse action does not rise to the level of a constitutional violation. Accordingly, Plaintiff has not provided sufficient evidence to sustain a claim for retaliation; thus, Defendants are entitle to summary judgment on Plaintiffs retaliation claim.

### D.  Defendant Todd's Failure to Intervene/Protect

The Sixth Circuit had adopted the following test for a plaintiff to succeed on a failure to intervene/protect claim:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved making the consequences of the defendant's conduct obvious; and
(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Westmoreland v. Butler Cty.*, 29 F.4th 721, 729 (6th Cir. 2022).

Plaintiff has not alleged that Defendant Todd made an intentional decision with respect to the conditions under which Plaintiff was confined put Plaintiff at a substantial risk of suffering serious harm. Rather, Plaintiff has admitted that Defendant Todd did not do anything wrong

13

personally, but that his subordinates' wrongs should lead to his liability. (DN 235-5, PageID #: 2920). Notably, § 1983 does not support a claim based on *respondeat superior*. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). Further, to establish a supervisory liability in a § 1983 action against a prison official "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff has failed to show facts suggesting that Defendant Todd encouraged any incident of misconduct or direct participation in such an incident. Accordingly, Plaintiff has failed to support a claim for failure to intervene/protect and Defendnats are entitled to summary judgment on the claim.

## V.

For the reasons stated above, **IT IS ORDERED** that the motion for summary judgment (DN 235) is **GRANTED**.

The Court will enter a separate Judgment dismissing the action for the reasons stated herein.

Date:    June 30, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, pro se
       Counsel of record
4414.016

14