**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**DAVID JASON TAYLOR,**                                                            **PLAINTIFF**

**v.**                                                     **CIVIL ACTION NO. 4:23-CV-00085-JHM**

**BRUCE TODD,** *et al.*                                                          **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on the motion for summary judgment filed by Defendants West Kentucky Correctional Healthcare, LLC d/b/a Comprehensive Correctional Care ("WKCH"), Matthew Johnston, Jonie Smith, Lindsey Ridings, and Whitney Franey.  (DN 236). Proceeding *pro se*, Plaintiff David Jason Taylor, filed a response to the motion (DN 246), and Defendants filed a reply.  (DN 252).  For the reasons that follow, the motion for summary judgment will be granted.

**I.**

WKCH took over as the contracted healthcare provider for the Henderson County Detention Center ("HCDC") on July 1, 2023.  Plaintiff was a pretrial detainee held at the Henderson County Detention Center ("HCDC") until his sentencing on July 27, 2023, upon which he became an incarcerated post-conviction prisoner; accordingly, Plaintiff's conviction status requires separate analysis where appropriate.  (DN 246, PageID #: 4092).  Plaintiff filed a complaint and a subsequent amended complaint[1] bringing a 42 U.S.C. § 1983 action against Defendants.[2]  (DNs 1, 28).  After review of the complaint pursuant to 28 U.S.C. § 1915A, this

---

[1] The amended complaint was originally filed in a separate action (4:23-CV-P129-JHM) also alleging claims for deliberate indifference to Plaintiff's serious medical needs against other healthcare providers at HCDC.  Upon review of the amended complaint, the Court determined that the actions should be consolidated with the complaint from the separate action being docketed as an amended complaint in the instant case.  (DN 27).

[2] Plaintiff's complaint and amended complaint name the following Defendants: Jailer Bruce Todd, Colonel Leslie Gibson, Felicia Rowan, Officer McElfresh, Officer Toman, Lt. Jane Knight, Officer Brickner, U.S.M.S. Greg Theil, Quality Correctional Care, Dr. Neil Troost, Nurse Practitioner Aimee Otterbein, LPN Tracy Davis, LPN Kelly Loveall,

Court determined that Plaintiff's claims for First Amendment denial of meaningful access to the courts claim could proceed generally and dismissed Plaintiff's claims under 18 U.S.C. §§ 4014, 4048, Federal Prisoner Healthcare Co-Payment Act of 2000 and claims against the United States Mashal's Service Deputy Greg Theil in his official capacity for failure to state a claim upon which relief may be granted. (DN 12). The amended complaint was similarly reviewed pursuant to 28 U.S.C. § 1915A. (DN 42). Therein, the Court determined that it would allow Plaintiff's Eighth and Fourteenth Amendment deliberate indifference to serious medical needs claim(s), First Amendment retaliation claim(s), and failure to intervene/protect claim to proceed against the relevant Defendants. (*Id*., PageID #: 1030-31).

On October 29, 2025, the Court entered its *Order and Seventh Revised Scheduling Order*, therein, Plaintiff was ordered to file a pretrial memorandum setting forth the facts supporting Plaintiff's claim(s) against Defendants. (DN 218). On February 2, 2026, Plaintiff filed the pretrial memorandum setting forth specific factual allegations against Defendants. (DN 232).

## II.

### A.  Factual Allegations

Plaintiff maintains that he was transferred from jail in Floyd County, Indiana to the HCDC. (DN 232, PageID #: 2822). With regard to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim(s), Plaintiff maintains that upon arrival at HCDC he explained his various medical issues to HCDC medical staff.[3]  (*Id*., PageID #: 2825). Plaintiff maintains that he

---

LPN Monica Chapman, RN Amanda Lamar, Nurse Whitney, Henderson County, Cody Medlock, Comprehensive Correctional Care, Dr. Wilson, Nurse Practitioner Matthew Johnston, Nurse Jonie Doe, Nurse Lindsy Doe, Nurse Kayla Doe, and Nurse Whitney Doe. (DNs 1, 28). Notably, a number of these Defendants were subsequently dismissed from this proceeding or Plaintiff's claim(s) against them will be adjudicated via separate memorandum opinion and order, as Defendants have filed separate motions for summary judgment. (DNs 235, 236, 237).

[3] As more fully described below, Plaintiff was a pretrial detainee for the month of July 2023. Accordingly, claims stemming from that time period will be analyzed under the Fourteenth Amendment. *See Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 605 (6th Cir. 2022) (explaining that the Eighth Amendment is utilized for post-conviction

explained he was experiencing penile bleeding, arm and hand swelling, lower back pain, rectal pain/bleeding, tooth pain, and lumps on Plaintiff's shoulder and back. (*Id.*) Further, Plaintiff maintains that his pacemaker was broken and explained his troubled heart and lung history to the HCDC medical staff.[4] (*Id.*)

Plaintiff represents that he was examined by Dr. Neil Troost who conducted a rectal examination when alerted of Plaintiff's rectal bleeding, which Plaintiff maintains was evidenced by blood in his boxers. (*Id.*). Plaintiff maintains that he alerted nurses of the bleeding in his boxers, but he was told to "keep [the boxers] on until the next day" when NP Aimee Otterbein could see him. (*Id.*). Plaintiff argues that both Dr. Troost and NP Otterbein ignored the bleeding, Plaintiff's complaints about spinal pain, and maintains that NP Otterbein testified that the blood in his boxers was merely "brown discharge" and not blood without an adequate medical basis to substantiate the claim. (*Id.,* PageID #: 2825-26). Plaintiff also contends that he was refused pain medication causing him to suffer. (*Id.*). Plaintiff maintains that a subsequent trip to a urologist found two ruptured blood vessels in his lower abdomen explaining the bleeding and blood trapped in his arm. Plaintiff maintains generally that he did not experience adequate medical care. (*Id.*).

Plaintiff also maintains that when the WKCH Defendants[5] took over medical care of HCDC his claims shifted from inadequate care to lack of care. (*Id.* PageID #: 2828). Plaintiff maintains that he had the same symptoms as previously described; however, Defendants maintained that X-rays and other tests came back negative and did not require further action. (*Id.*). Plaintiff maintains that a CT scan should have been ordered, but it was not, that Defendants entered

---

deliberate indifference claims and the Fourteenth Amendment is utilized for pretrial detainee deliberate indifference claims).

[4] Plaintiff later testified that his Eighth Amendment deliberate indifference claim stems from (1) infrequent edema (swelling, discoloration, and pain) in his harm; (2) back pain; and (3) rectal bleeding. (DN 236-6, PageID #: 3569).
[5] The WKCH Defendants are made up of WKCH, NP Matthew Johnston, LPN Jonie Smith, LPN Lindsey Ridings, and LPN Whitney Franey.

false information into the computer system, and that Defendants ignored his pain and refused to refer him to a qualified physician or specialist to treat it.[6] (*Id.*).  Plaintiff also claims that Defendant Ridings threatened Plaintiff with isolation for filing requests and grievances.

### B. Defendants' Motion for Summary Judgment

Defendants maintain that Plaintiff has a history of chronic cardiac and pulmonary disease including hypertrophic obstructive cardiomyopathy, which is managed with a pacemaker, moderate COPD, which is managed with inhalers, alongside other associated comorbidities including: back pain radiating into Plaintiff's tailbone, buttocks, and legs, rectal bleeding and/or blood in Plaintiff's urine.  (DN 236-1, PageID # 3225).  Defendants maintain that Plaintiff was seen by WKCH staff at least 38 times during the relevant time period.  (DN 236-2).

With regard to Plaintiff's claims regarding his arm edema, Defendants contend that during the initial evaluation of the symptoms, Defendants observed no swelling or discoloration. (DN 236-1, PageID # 3237).  Plaintiff was observed a second time with similar findings. (*Id.*).  It was not until a third check, nearly five months after the first observation of Plaintiff that Defendants observed slight swelling, but no discoloration.  (*Id.*).  Defendants observed Plaintiff for a fourth time and again found slight swelling, but no indication of an edema.  (*Id.*).

With regard to Plaintiff's back pain, Defendants contend that WKCH medical staff obtained medically unremarkable x-rays precluding the authorization of additional testing as requested by Plaintiff.  (*Id.*, PageID #: 3237-38).

Concerning Plaintiff's rectal, gastrointestinal, genitourinary, and pulmonary issues Defendants note that Plaintiff initially reported rectal bleeding in 2022 while housed at the Floyd County Jail ("FCJ"), where FCJ medical staff examined Plaintiff and were unable to identify any

---

[6] Notably, Plaintiff does not explain what false information was entered.

active bleeding, but suggested the culprit may have been internal hemorrhoids. (DN 236-4). FCJ staff performed a urinalysis which showed no hematuria. (*Id*.) Further, FCJ prescribed Plaintiff stool softeners, which Plaintiff failed to take; however, FCJ staff noted the issue as resolved as Plaintiff experienced no further bleeding. (*Id*.).

After Plaintiff arrived at HCDC, Plaintiff did not report, nor receive treatment regarding the hematuria or rectal bleeding until July 1, 2023, when Plaintiff filed a grievance reporting his rectal pain and bleeding. (DN 236-3). Over the next few days, Plaintiff filed further grievances reporting rectal and spinal pain, breathing trouble, lack of an inhaler, brown urine, for which Plaintiff requested an ultrasound, urinalysis, and stool samples which were subsequently approved. (*Id.*).

Defendants examined Plaintiff on July 1 after his initial reports of his edema and rectal bleeding; but determined that there was no pressing medical issue – noting that there was no visible edema and no active rectal bleeding. (*Id*.). Regardless, Defendants ordered a comprehensive battery of tests including lab work, stool and urine sampling, and an ultrasound. (*Id*.). The lab results identified minor, clinically insignificant abnormalities. (*Id*.).

Despite the lack of findings, Defendants continued to see Plaintiff for allegations of rectal pain and bleeding throughout July and August, though Defendants never observed any such bleeding; however, Defendants submitted a CT scan request to the Marshals, and prescribed pain management medication in the form of Cymbalta and antibiotic ointments.[7] (*Id*.). In September, Plaintiff remained under supervision of Defendants including multiple medical evaluations, and eventual placement in medical isolation upon Plaintiff's reports of bowel issues. (*Id*.). A CT scan was eventually performed revealing no abnormalities and mild stool burden. (*Id*.). Observation

---

[7] Defendants maintain that the CT request was denied, but the Marshals permitted resubmission if symptoms persisted. (DN 236-3).

continued throughout October; however, Plaintiff refused medical isolation for the purpose of collecting a stool sample. (*Id.*).  Defendants continued to evaluate Plaintiff with a cardiology appointment revealing no demonstrable cause for Plaintiff's complaints of pain and numbness; further, Defendants promptly ensured access to a dentist when Plaintiff began to complain of tooth pain, prescribing pain medication and antibiotic treatment until Plaintiff's tooth could be extracted in December. (*Id.*).

In January 2024, WKCH staff facilitated an electrophysiologist appointment, which revealed no musculoskeletal or gastrointestinal issues. (*Id.*).  Further, Defendants ordered an x-ray and ultrasound of Plaintiff's pelvis, which came back negative. (*Id.*).

In short, Defendants argue that the constant level of care provided to Plaintiff precludes his Eighth Amendment deliberate indifference claim and that Plaintiff cannot meet the objective or subjective prongs of the test.  For instance, Defendants maintain that Plaintiff cannot satisfy the objective prong on the test because he cannot show that he was not receiving medical treatment for his medical issues and he cannot challenge the adequacy of the care he received because he has presented no medical proof that the provided treatment was not an adequate treatment of his condition. (DN 236-1, PageID #: 3246-49).  Concerning the subjective prong, Defendants contend that they took reasonable steps to care for Plaintiff's medical issues and that there is no way for Plaintiff to show that Defendants (i) were aware of facts that they could infer that an excessive risk to Plaintiff's health existed; (ii) drew that inference; and (iii) disregarded the risk. (*Id.*, PageID #: 3249-50).

Lastly, Defendants argue that Plaintiff has failed to make a prima facie showing of a retaliation claim against Defendants. (*Id.*, PageID #: 3251).  Generally, Defendants argue that Plaintiff's grievances against Defendants are frivolous and that he has provided no actual evidence

or retaliation. (*Id.*, PageID #: 3252). Further, despite viewing Plaintiff's grievances as frivolous, Defendants maintain that they maintained the applicable standard of care throughout their interaction with Plaintiff as evidenced by the numerous examinations, tests, and prescriptions afforded to Plaintiff. (*Id.*, PageID #: 3251-53). Further, Defendants certify that Defendants would have taken the same action regardless of any grievances filed by Plaintiff. (*Id.*, PageID #: 3253).

### C. Plaintiff's Response

On April 27, 2026, Plaintiff filed a response to Defendants' motion for summary judgment. (DN 246). Therein, Plaintiff raises a number a factual disputes raised by Defendants' motion for summary judgment including:

1.      Plaintiff alleges that Defendants misstate his conviction status by alleging that he was a post-conviction incarcerated person, by pointing out that the original complaint was filed on July 14, 2023, and Plaintiff's sentencing took place on July 27, 2023. (*Id.*, PageID #: 4092);

2.      Plaintiff contends that the medical testing at HCDC did not "substantiate [Defendants'] claims. (*Id.*);

3.      Subsequent testing at the B.O.P. found a rupture in Plaintiff's prostate explaining the bleeding and pointing towards a lack of adequate care, and that B.O.P. subsequently found that his left arm was one and a half inches bigger than the right. (*Id.*, PageID #: 4093-94);

4.      Plaintiff argues that the FCJ found medical issues with him prior to his time at HCDC and the B.O.P found issues subsequent to his time at HCDC. Accordingly, Defendants' assertions that they could not find anything wrong with him were untrue, and the only conclusion the Court should draw is that Defendants ignored Plaintiff's medical needs. (*Id.*, PageID #: 4094);

7

5.      Plaintiff maintains that Defendants' contentions that Plaintiff's claims were exaggerated or frivolous are unfounded because Defendants allegedly did not administer the correct diagnostic testing to make that determination.  (*Id.*, PageID #: 4096);

6.      Plaintiff generally alleges that his symptoms regarding the edema and back pain were subsequently proven to be accurate based on subsequent B.O.P. testing.  (*Id.*, PageID #: 4097-98);

7.      Plaintiff contends that Defendants' contention that Plaintiff did not complain of rectal bleeding until July 2023 is incorrect, as he had complained about it at his detention hearing prior to July 2023.  (*Id.*, PageID #: 4100);

8.      Plaintiff contends that his visit to an electrophysiologist could not have revealed that he had no musculoskeletal or gastrointestinal issues as argued in Defendants' motion for summary judgment.  (*Id.*, PageID #: 4101);

9.      Plaintiff contends generally that Defendants falsified medical records.  (*Id.*, PageID #: 4102).

### D. Defendants' Reply

Defendants agree that Plaintiff was in fact a pretrial detainee from July 1, 2023, through July 27, 2023; however, Defendants contend that the distinction between a pretrial detainee and a post-conviction inmate is immaterial in this instance because Plaintiff cannot satisfy the tests associated with either status.  (DN 252, PageID #: 4146-47).  Defendants maintain that the objective prong of both the Eighth and Fourteenth Amendments test for deliberate indifference to serious medical needs is identical and that Plaintiff cannot meet that prong as set forth in Defendants' motion for summary judgment.  (DN 252, PageID #: 4148-49).

8

Defendants acknowledge that the subjective test under the Eighth and Fourteenth Amendments differs. *See Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 605 (6th Cir. 2022). (*Id.*, PageID #: 4149). Defendants reallege the arguments set forth in their motion for summary judgment regarding the test under the Eighth Amendment. (*Id.*, PageID #: 4148-4151). With regard to the subjective prong of the Fourteenth Amendment, Defendants contend that Plaintiff could not adequately show that: (1) Defendants intentionally disregarded Plaintiff's serous medical condition; (2) the intentional disregard of Plaintiff's serious medical needs put him in substantial risk of suffering serious harm; (3) that Defendants failed to take the measures to abate the risk that a reasonable provider would under the circumstances; and (4) the failure to take those measures caused injury to Plaintiff. *See Westmoreland v. Butler Cnty., Ky*, 29 F.4th 721, 728-29 (6th Cir. 2022). (*Id.*, PageID #: 4151).

Defendants also contend that facts disputed in Plaintiff's unsworn response cannot constitute evidence to overcome judgment and at best present a "mere scintilla of evidence," which is not enough to prevail. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003). (*Id.*, PageID #: 4152).

Lastly, Defendants contend that Plaintiff has not presented adequate evidence that any retaliation was done to him; accordingly, any retaliation claim must fail. (*Id.*, PageID #: 4153-55).

### III.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the

9

moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

10

**IV.**

*A. Eighth and Fourteenth Amendment Deliberate Indifference to Serious Medical Need*

To establish a § 1983 claim premised on inadequate medical care in violation of the Eighth Amendment, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 837-47). Less flagrant conduct, however, may still evidence deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Terrance*, 286 F.3d at 843 (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Moreover, the standard applied in reviewing the actions of prison doctors and medical staff in this type of case is deferential. *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762

11

(3rd Cir. 1979).  Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are "generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  A court typically will not find deliberate indifference when some level of medical care has been offered to the inmate.  *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002).  Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference.  *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996).  Thus, a difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate indifference claim.  *Ward v. Smith*, No. 95-6666, 1996 U.S. App. LEXIS 28322, at *2 (6th Cir. Oct. 29, 1996).  "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Here, the balance of the record reflects that Plaintiff's grievances and requests were responded to; accordingly, the Court construes Plaintiff's remarks as a challenge regarding the adequacy of his care.  For instance, while sitting for a deposition, Plaintiff testified thusly:

> Q. And they assessed you and would, you know, take notes about your complaints and care was provided; correct?
> A. I seen [sic] them.  I'm not going to say – some care was provided.  I can't say if it was adequate.
> …
> Q. So all of the imaging was ordered to investigate some of these issues you were complaining about; right?
> A. Sure.

(DN 236-6, PageID #: 3562-63).

Accordingly, Plaintiff has admitted that he was not denied medical treatment; but rather he claims that the treatment was inadequate.  Plaintiff has provided no evidence that his treatment

12

was "so woefully inadequate as to amount to no treatment at all." *See Mitchell*, 553 F. App'x at 605. Accordingly, Plaintiff fails the objective prong of the deliberate indifference test. Notably, the objective prong of the Eighth Amendment and Fourteenth Amendment deliberate indifference to serious medical needs test is identical. *See Sutton v. Wriggelsworth*, No. 24-1483, 2025 LX 202610, at *2-3 (6th Cir. Jan. 23, 2025). Because Plaintiff has failed the objective prong of the test, there is no need to delve into the subjective prong. *See Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). Accordingly, the Defendants are entitled to summary judgment on Plaintiff's deliberate indifference to medical needs claim.

### *B. Retaliation*

In order to establish a First Amendment retaliation claim, Plaintiff must demonstrate that: (i) he engaged in activities protected by constitution or statute; (ii) Defendants took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (iii) the adverse action was taken at least in part because of the exercise of the protected conduct. *See Thaddeus-X v. Blatter*, 175 F. 3d 378, 394 (6th Cir. 1999). Further, "[a]n inmate has no right to be free from verbal abuse, [] and minor threats do not rise to the level of a constitutional violation." *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002).

Here, Plaintiff claims Defendants retaliated against him for filing grievances by removing him from medical housing and threatening him with segregation and denied his symptoms in retaliation for filing grievances. Plaintiff has not provided evidence to show any form of retaliation against him. To the contrary, the record reflects that Plaintiff filed 59 medical requests and grievances and was provided medical treatment on 38 occasions during the seven months Defendants treated him. While it seems that Plaintiff was removed from medical housing, it appears to have been at his own request. (DN 265-5, PageID #: 3362, 3366). Further, the only

13

time Plaintiff was placed in segregation was for the purpose of medical staff collecting a stool sample. (DN 236-2, PageID #: 3262). Put simply, Plaintiff has not adequately provided evidence that there was retaliation on the part of Defendants against him for filing grievances and/or medical requests. Mere allegations that retaliation has occurred in Plaintiff's pleadings are not enough to overcome judgment at this stage. *See Sutherland*, 344 F.3d at 613.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

**V.**

For the reasons stated above, **IT IS ORDERED** that the motion for summary judgment (DN 236) is **GRANTED**.

The Court will enter a separate Judgment dismissing this action for the reasons stated herein.

Date:    June 30, 2026

Joseph H. McKinley Jr., Senior Judge

United States District Court

cc:    Plaintiff, *pro se*
       Counsel of record
4414.016

14